1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANTZ E. ARNELL, | CASE NO. 07cv0743-LAB (RBB) |
| Plaintiff, | **ORDER STRIKING THIRD SUCCESSIVE MOTION FOR RECUSAL, AND AMENDED ORDER TO SHOW CAUSE RE: SANCTIONS** |
| vs. | |
| JUDGE W. McADAM, Department 8 Superior Court of California, County of San Diego, South County Judicial District, | |
| Defendants. | |

## I.    Procedural History

On June 29, 2007, Plaintiff filed a motion requesting the recusal of Judge Larry Burns ("First Recusal Motion").  On July 10, 2007, the Court denied this motion, noting factual deficiencies in it.  On July 17, 2007, without leave, Petitioner again filed a motion seeking Judge Burns' recusal (the "Second Recusal Motion," attached hereto as Appendix 1).  In the Second Recusal Motion, Plaintiff re-asserted his previous contentions of bias.  In addition, he alleged mental incapacitation on the part of Judge Burns for allegedly misreading his

/ / /

/ / /

/ / /

1    complaint.  In the caption, Plaintiff identified August 13, 2007 as the hearing date on this

2    motion.[1]

3           The Court issued an order signed on July 21, 2007 and entered on July 23, 2007,

4    striking the Second Recusal Motion and ordering Plaintiff to appear at a hearing to be held

5    on August 13, 2007 at 12:00 noon and show cause why he should not be sanctioned

6    pursuant to Fed. R. Civ. P. 11 for filing the Second Recusal Motion for an improper purpose.

7           On July 20, 2007,[2] Plaintiff again submitted to the Court a pleading, captioned

8    "Complaint to Chief Justice that Judge Burns is Mentally Incapacitated."  The heading,

9    however, identifies the court as the U.S. District Court for the Southern District of California,

10   the case number identifies this case, and the caption indicates that the hearing is to be held

11   in courtroom 9 before Judge Burns.  The Court therefore construes this as a successive

12   motion for recusal.[3]  This motion (the "Third Recusal Motion," attached hereto as Appendix

13   2) also purports to set August 13, 2007 at 10:30 a.m. as the hearing date.

14          The Third Recusal Motion suffers from the same deficiencies and appears to commit

15   the same violations as did the Second Recusal Motion, although in the Third Recusal Motion

16   the accusations are magnified so as to include charges of confabulation (Third Recusal

17   Motion at 4:6) and repeated suggestions that Judge Burns suffers from "diminished mental

18   capacity" or "mental incapacity."  (*Id.* at 3:28, 4:4–5.)

19   / / /

20   / / /

21   _____

22          [1] On calendar for August 13, 2007 at 10:30 a.m. is a hearing on Defendant's motion
     to dismiss.  Plaintiff apparently selected this date to coincide with that hearing.

23          [2] This pleading has a signature date of July 14, 2007.  The Court signed its order on
24   July 21 before this pleading was received in chambers or entered into the docket.  Thus,
     Plaintiff had no notice of the Court's July 23 order when he filed the Third Recusal Motion,
     and the Court had no notice of Plaintiff's Third Recusal Motion when it issued its order that
25   was later docketed on July 23, 2007.

26          [3] Plaintiff cites 28 U.S.C. § 351(a) as the basis for his filing.  (Third Recusal Motion
27   at 1:27–2:9.)  However, this section specifically states that the complaint should be filed with
     the clerk of the court of appeals.  Plaintiff is aware of this provision, because he has directly
     quoted it in his Third Recusal Motion.  (*Id.* at 2:2–3 (". . . file with the clerk of the court of
28   appeals for the circuit a written complaint . . . .")).  There is no suggestion that any such
     request should be filed in the district court.

07cv0743

## II.     Rule 11

As noted, the Court previously identified Rule 11 violations in connection with the Second Recusal Motion, and ordered Plaintiff to appear at a hearing to show cause why he should not be sanctioned.  In light of Plaintiff's submission of the Third Recusal Motion, the Court now reconsiders and amends its order of July 23, 2007.

### A.     Summary of the Underlying Incident

The complaint, which spans well over 170 pages,[4] is disjointed, contradictory, and chronologically disordered; and makes reference to events and persons whose relevance is never fully explained.  Furthermore, Plaintiff's representations regarding his complaint, as well as regarding the record, are replete with inconsistencies and inaccuracies. The following summary is based on materials submitted by Plaintiff and representations made by Plaintiff to the Court, and is included for purposes of providing clarifying background information. The Court's reference to these materials does not imply they will be admissible as evidence nor should this background summary be construed as the Court's factual findings.

According to the police report made after the incident, which Plaintiff attaches as an exhibit to his complaint, Dr. Arnell and his neighbors had been involved in "continuing disputes concerning the property line" dividing their two residential properties in the city of Coronado.  (Complaint at 37 (undifferentiated exhibit identified as police report of the incident).)  Two residents of the neighboring property, a married couple, Valerie and Greg Hebert were involved in a dispute with Plaintiff over a wall being built on or near the property line.  (*Id.*)  Plaintiff alleges Valerie and Greg Hebert at some point in the past had poured

/ / /

---

[4] This includes two introductory pages and 18 pages in the body of the complaint. The remainder consists of a jumble of mostly unlabeled exhibits.  Plaintiff has attempted a table of contents of the exhibits, but has mixed number and letter designations and used some exhibit numbers twice (Complaint at i:12–22), and has failed to paginate the exhibits as required under Civ. Loc. Rule 5.1(e). The exhibits are also given designations that do not clearly identify them (*e.g.*, "California Appellate Court misconduct," and "Attorney misconduct.  Witness affidavit.") and are interspersed with pages announcing exhibit numbers, which have nothing to do with the actual exhibits (*e.g.*, Complaint at 31 ("Exhibit 1")).  Citations to exhibits are therefore given with reference to pages of the complaint, such that the first page of the exhibits would be cited as Complaint at 19.

1  concrete on his driveway, blocking what he calls "the only commercial entrance to [his]

2  research office and facilities." (*Id*. at 4:25–27.)

3       The house in which Valerie and Greg Hebert resided was, according to the police

4  report, owned by a trust. (Complaint at 37.) The trust is identified with the name of Valerie

5  Hebert's mother, Elizabeth Rosenthal. (*Id*. at 4:15, 37.) In the portion of a deposition

6  transcript submitted by Plaintiff, the police officer who arrived on the scene identifies

7  Elizabeth Rosenthal as a beneficiary of the trust that owned the house. (*Id*. at 84–85.)

8  Plaintiff also includes a portion of the deposition transcript of Randlett Lawrence, the man

9  he says attacked him, in which Lawrence identifies the neighboring house as "her [Elizabeth

10  Rosenthal's] house." (*Id*. at 88 (Petition for Writ of *Coram Nobis*, quoting Deposition of

11  Lawrence).) Plaintiff, however, believed the house was owned by Valerie Hebert (*Id*. at

12  4:15–16.)

13       On September 26, 2004, the day the incident occurred, Rosenthal came to Plaintiff's

14  house, which adjoined her property, accompanied by Lawrence. While the police report

15  merely says Rosenthal as "acquainted with" Lawrence, Lawrence himself says they were

16  married. (*Cf.* Complaint at 37; *id*. at 88 (petition for writ of *coram nobis*, citing a deposition

17  of Lawrence, in which Lawrence identifies the woman accompanying him as his wife).)[5] The

18  police report indicates Rosenthal and Lawrence were at the scene in order to check on the

19  property. (*Id*. at 38 (police report summarizing statement of Elizabeth Rosenthal).) Plaintiff

20  alleges that this was merely a pretext and that the two were in fact there to attack him.

21  (Second Recusal Motion at 2:8–9 (stating that Rosenthal and Lawrence arrived at Plaintiff's

22  property "allegedly to check on the grounds at the home next door").)

23       Plaintiff disputes what happened next. He contends Rosenthal and Lawrence

24  approached him in his driveway while he was using string to mark the property line.

25  (Complaint at 5) and Lawrence "armed himself with a deadly weapon" (*id*. at 5:4) which

26  / / /

27  _____

28      [5] The explanation for this apparent inconsistency may be that Lawrence and Rosenthal were married after the incident but before the deposition, although the complaint does not elaborate on this.

1  was a "sword used for cutting concrete," (*id.* at 5:26–27), after which Lawrence engaged in
2  an unprovoked attack on Plaintiff.

3  By contrast, in the statement Lawrence gave to police, Lawrence says first that
4  Rosenthal confronted Plaintiff because he was marking the property line, apparently in
5  violation of an agreement to take no action until the property had been surveyed. (Complaint
6  at 122.)[6]   Lawrence says he then pulled the stake out of the ground, at which Plaintiff
7  demanded to know what he was doing, and demanded that Plaintiff give him the stake. (*Id.*)
8  When he gave Plaintiff the stake, Lawrence says, Plaintiff then threatened him, and began
9  punching and attacking him. (*Id.*)

10  Two passers-by with apparently no connection to either property or any property
11  owner gave statements to police, stating that Plaintiff was the aggressor and that Lawrence
12  had done nothing provocative other than to pull a stake or bar out of the ground and hand
13  it to Plaintiff. (Complaint at 37–38.) The police report notes statements given by Rosenthal
14  and Lawrence which appear to agree with statements given by the other witnesses. (*Id.* at
15  38.)  The police report notes that when he officer arrived on the scene, Plaintiff's wife was
16  present but refused to answer any questions. (*Id.*)  Plaintiff alone reported the version of
17  events he now propounds. (*Id.*) The police report also notes that the iron stake weighed 7.2
18  pounds and appeared to be too heavy to be handled by Lawrence in the manner described
19  by Plaintiff, whom the officer described as an elderly man who walked with the aid of a cane.
20  (*Id.* at 37.)

21  **B.    Altercation with Lawrence and Rosenthal**

22  Plaintiff believes it was obviously wrong to provide the summary that "Plaintiff was
23  involved in an altercation with a neighbor . . . ." (Second Recusal Motion at 3:15–16; Third
24  Recusal Motion at 3:20–21.)  He apparently believes his complaint made clear that the
25  altercation was with Lawrence only, and that Lawrence is not and has never been a
26  neighbor.

27  _____

28      [6] Although the police report says this typewritten statement is attached, it is omitted from earlier exhibits that include the police report.

1    In the Second Recusal Motion, Plaintiff portrays Lawrence as a man of uncertain

2    identity having no clear connection to the property occupied by Valerie and Greg Hebert

3    other than an unexplained murderous grudge against Plaintiff.  (Second Recusal Motion at

4    2:5–10 (". . . a man carrying the identification of Lawrence drove from his residence in Point

5    Loma, California with premeditation and malice aforethought, picked up an accomplice and

6    drove down [Plaintiff's street], allegedly to check on the grounds at the home next door .

7    . ."); *cf.* Complaint at 91 (Petition for Writ of *Coram Nobis*) ("Lawrence and his accomplice

8    could have called the police when they saw [Plaintiff] with the string.  Lawrence didn't have

9    to attack him with the deadly weapon.  They didn't want him arrested.  They wanted him

10   dead.  They still do."))

11   Although Plaintiff now says Lawrence lived in Point Loma (Second Recusal Motion

12   at 2:7; Third Recusal Motion at 2:16), the body of the complaint never says this.  Rather, it

13   merely says Lawrence "came to Coronado," (Complaint at 5:17) but does not say when he

14   came, or where he resided.  After searching through the exhibits,[7] the Court has located

15   references to Lawrence residing either in Point Loma (Complaint at 88 (Petition for Writ of

16   *Coram Nobis*) or Loma Portal (*id.* at 122 (statement of Lawrence to police)).

17   Plaintiff apparently does not dispute, however, that Rosenthal did live in Coronado

18   and was his neighbor.  (Complaint at 5:17–19 (alleging that Lawrence picked up Rosenthal

19   in Coronado before seeking out Plaintiff).)  Lawrence says Rosenthal lived roughly three

20   blocks away in Coronado.  (*Id.* at 122.)  The police report  indicates that Rosenthal regarded

21   Plaintiff as her "next-door neighbor,"  (*id.* at 38), apparently referring to her ownership of the

22   house adjacent to Plaintiff's.

23   / / /

24

_____

25   [7] Sifting through the record to find information not cited to in the body of a pleading
is not the Court's role.  *See, e.g., United States v. Voigt*, 877 F.2d 1465, 1470 (10th Cir.),
26   *cert. denied*, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989).  *Cf. Independent Towers
of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting that courts "review
27   only issues which are argued specifically and distinctly in a party's opening brief") (quoting
*Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)).
28

1    Lawrence's account identifies Rosenthal as having confronted Plaintiff about his
2    marking the property line.  (Complaint at 122.)  Plaintiff agrees Rosenthal was involved in
3    the dispute, repeatedly referring to her as Lawrence's accomplice and suggesting she was
4    there to help attack him.  (*See, e.g.*, Second Recusal Motion at 2:5–10.)

5    It appears obvious, even judging by Plaintiff's own statements, that Plaintiff was
6    involved in ongoing disputes with his neighbors, and that the assault arose out of those
7    disputes.  It is likewise clear that Plaintiff was involved that day in a disagreement with
8    Lawrence and Rosenthal that immediately culminated in violence.  It is accurate to say that
9    Rosenthal was and is Plaintiff's neighbor, but it was not clear from the body of the complaint
10   whether Lawrence also was or is now his neighbor.  On the basis of information the Court's
11   more extensive review of the exhibits has uncovered, it appears accurate to say Lawrence,
12   a neighboring property owner's husband, was or is also Plaintiff's neighbor.  Furthermore,
13   the Court notes that Defendant refers to the incident as a "neighborhood altercation."
14   (Memo of P. & A. in Supp. of Mot. to Dismiss at 2:6.)  Therefore, it is the Court's opinion that
15   the brief summary represented a fair reading of the complaint.

16   Even if this summary were not accurate, however, the fault lies with Plaintiff, who did
17   not clearly present the facts in the body of his complaint or in his moving papers.  As
18   discussed previously, it is not the Court's role to scour lengthy exhibits to locate information
19   not found in the complaint.  This is particularly true when the information at issue is
20   tangential, as was the case here.

21   **C.    Proceedings Before Judge McAdam**

22   Judge McAdam is the sole named Defendant in this case.  Judge McAdam is a
23   Superior Court judge.  A *coram nobis* petition is roughly equivalent to a motion to vacate and
24   is thus decided by the trial court.  *People v. Gallardo*, 77 Cal.App.4th 971, 982 (Cal. App. 1
25   Dist. 2000).  The fact that Judge McAdam was involved in denying Plaintiff's *coram nobis*
26   petition gives no indication regarding whether he also presided at trial.  *See, e.g.*, *People v.*
27   *Chaklader*, 24 Cal.App.4th 407, 410 (Cal. App. 2 Dist. 1994) (noting that the same judge who
28   had presided at trial also denied appellant's petition for writ of error *coram nobis*); *see also*

*id.* at 413 (affirming denial of the writ).  A *coram nobis* petition cannot be used to correct legal error, except where the error is jurisdictional.  *People v. Ibanez*, 76 Cal.App.4th 537, 543 (Cal. App. 4 Dist. 1999).

Plaintiff finds fault with the Court's summary of the procedural history which stated that Plaintiff "was tried on criminal charges before Judge McAdam."  (Second Recusal Motion at 3:16–17; Third Recusal Motion at 3:21–22.)  He contends, "There was no trial and Judge McAdam did not find us[8] guilty."  (Second Recusal Motion at 3:19–20; Third Recusal Motion at 3:24–25.)

The complaint and other pleadings, however, can fairly be read to suggest that Judge McAdam was involved during the trial phase.  Plaintiff represents Judge McAdam's involvement at the trial phase and his denial of the writ of *coram nobis* as <u>separate actions</u> on Judge McAdam's part, and cites both as the basis for this action:

> [T]he District Attorney's office dropped the charges against [Lawrence] and pressed charges against [Plaintiff] who was at his residence minding his own business. . . . Judge McAdam became aware of these facts and could have dropped the charges against [Plaintiff] but did not.  He could have granted a writ of coram nobis to review the evidence but did not[,] and this is in direct defiance of his responsibility as an official of the Court.

(Opp'n to Defendant's Mot. to Dismiss at 2:4–10.)  Plaintiff also repeatedly mentions as the basis for his complaint Judge McAdam's refusal to "drop" charges after learning that charges against Lawrence had been dropped and before additional charges were filed against Plaintiff.  (*See, e.g.*, First Recusal Motion at 2:8–9; *see also generally id.* at 1:20–2:14 (setting forth events apparently in chronological order).)

The complaint suggests that Plaintiff at first pled not guilty and some trial proceedings were held.  (*See* Complaint at 1:23–24 ("Again and again the [Plaintiff] pled not guilty"), 5:9–13 (summarizing the testimony of witnesses, comparing their testimony to their depositions, and accusing witnesses of perjury).)  How far the trial phase proceeded, however, is left unexplained.  The complaint also says that at some point Plaintiff pled guilty.  (*Id.* at 2:3–5 (contending that, after more than one court appearance, Plaintiff was "forced

---

[8] Plaintiff for unexplained reasons repeatedly refers to himself in the plural.

1  to plead guilty").) Plaintiff also repeatedly makes references that appear to refer to evidence

2  presented at trial and other events normally associated with a trial (*See, e.g.*, *id.* at 2:12–14

3  ("[Plaintiff] petitioned the superior court for a writ of Coram nobis presenting the new

4  evidence which proved his innocence."); 3:1–2 ("Judge McAdam acknowledged that there

5  was prosecutorial misconduct."); 5:13 ("multiple counts of perjury").)

6         In view of the contradictory nature of the complaint and Plaintiff's Second and Third

7  Recusal Motions, the Court has looked to pleadings and exhibits filed by <u>Defendant</u> in his

8  motion to dismiss, and has concluded that Plaintiff's representations regarding the nature,

9  type, and extent of proceedings in the state court were misleadingly incomplete.  For

10 example, civil proceedings were in fact held in which Lawrence successfully sought

11 sanctions against Arnell.  (See Memo of P. & A. in Supp. of Mot. to Dismiss at 2, n.4; *see*

12 *also id.*, Ex. D (copy of order in *Randlett T. Lawrence v. Lantz E. Arnell*, California Court

13 Case No. GIS20077).)

14        It appears Plaintiff's criminal case was not tried to a verdict, but that at some point he

15 pled guilty.  Nevertheless, the Court's reference to Plaintiff's having been "convicted," and

16 reference to Plaintiff "unsuccessfully attacking his conviction" are accurate, because the term

17 "convict" means to find a defendant guilty, whether upon a trial or upon a plea.  *See, e.g.*,

18 *Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) ("The definition of

19 'conviction' includes a plea of guilty.") (citing *Black's Law Dictionary* 333 (6th ed. 1990)).

20        As before, the Court concludes that, even if Plaintiff was not tried before Judge

21 McAdam, its brief summary represented a fair reading of the complaint.  If the Court's

22 reading is inaccurate, the inaccuracy is fairly attributable to inaccuracies in the complaint and

23 in Plaintiff's other pleadings.

24        **D.    Statements Regarding Mental Incapacity**

25        The analysis in sections II.B and II.C above demonstrates in part the basis for the

26 Court's conclusion that its one-sentence summary represented a fair reading of the

27 complaint and that, if Plaintiff had considered the actual contents of his complaint and other

28 pleadings, he would have realized they did not clearly state the facts he now sets forth.

However, even assuming the Court's reading of the complaint and other pleadings represented such an obvious error as Plaintiff contends it does, his statements regarding Judge Burns' purported mental incapacity appear to violate Fed. R. Civ. P. 11(b) (*See* Second Recusal Motion at 3:21–4:15; Third Recusal Motion at 3:27–6:9, 7:22–23.)

Courts sometimes misread pleadings or records, and provisions are made in law for the correction of such errors through the Court's own reconsideration, or a writ or appeal. Such misreadings, while regrettable, are not considered cause for alarm or reason to question the court's competence. *See, e.g.*, *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 511 (9th Cir. 1984) (frankly noting district court's clearly erroneous reading of the record but affirming the district court's finding as supported by other evidence). Indeed, common sense suggests that simple, isolated errors or misstatements are everyday occurrences and not evidence of brain damage or mental illness.

It is apparent to the Court that Plaintiff is not making assertions of mental incapacity in good faith. Plaintiff claims he is a medical doctor, and couches his challenge in medical terms, feigning concern for the Court's health and well-being. (Second Recusal Motion at 3:18–4:15 ("[L]egally, if not for his own good[,] he should be disqualified. We[9] hope Judge Burns recovers without residual effects."); Third Recusal Motion at 4:7 ("We[10] hope Judge Burns recovers without residual effects.")) He suggests that his medical expertise is the basis for his conclusions. (*Id.* at 4:13–14 (suggesting that non-physicians might not realize Judge Burns is impaired).)

However, even assuming Plaintiff is a qualified medical doctor, he has no basis for diagnosing neurological or cerebrovascular disease, or recommending medical screening procedures based solely on a sentence in a writing sample. (*See* Second Recusal Motion at 3:21–28; Third Recusal Motion at 3:27–4:5; 5:3–8.) Furthermore, even accepting

---

[9] *See* supra note 8.

[10] *See* supra note 8.

07cv0743

Plaintiff's accusations at face value, his charges of confabulation[11] (Third Recusal Motion at 4:6) and "[l]oss of the ability to understand the written word" (Second Recusal Motion at 3:21–22; Third Recusal Motion at 3:27) have no basis whatsoever.  Nor, if he is speaking from a medical point of view, does he have any reason to describe his medical conclusions as legal certainties — *i.e.,* "We[12] are left with proof that Judge Burns is reading without comprehension."  (Second Recusal Motion at 3:18–19 ; Third Recusal Motion at 3:23–24.)

Plaintiff's pretended belief that Judge Burns is mentally incapacitated appears to be mere posturing.  It is apparent to the Court that Plaintiff's motion was not in fact filed because Plaintiff in good faith believed recusal was proper, but was filed for an improper purpose, in violation of Fed. R. Civ. P. 11(b)(1).  It is also apparent to the Court that either 1) Plaintiff either did not make reasonable inquiry to confirm the bases for his legal and factual contentions and allegations, as required under Fed. R. Civ. P. 11(b)(2) and (3), or else 2) if he did, he knew his contentions and allegations were unwarranted and filed the Second Recusal Motion and Third Recusal Motion anyway, either of which also violates Rule 11(b).

It therefore appears Plaintiff has violated Fed. R. Civ. P. 11(b) by filing his Second Recusal Motion.  Although the Third Recusal Motion addresses the "Chief Justice," the Court need not consider at this point whether Plaintiff hoped it would be ruled on by someone other than Judge Burns or what his subjective motivation was for submitting this paper for filing.[13] By signing it and presenting it to this Court, Plaintiff brought his Third Recusal Motion within Rule 11's purview.  It therefore appears Plaintiff has also violated Fed. R. Civ. P. 11(b) by filing his Third Recusal Motion.

---

[11] Confabulation refers to filling in of gaps in memory by unconstrained fabrication. *Merriam-Webster's Medical Desk Dictionary* 164 (2005).

[12] *See supra* note 8.

[13] Sanctions are appropriate under Rule 11(b)(2) when a pleading which has been filed is objectively "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), *overruled on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

1   **III.   Conclusion and Order**

2      Plaintiff is again directed to review the Civil Local Rules and Federal Rules of Civil

3   Procedure, particularly Civil Local Rule 7.1 and Fed. R. Civ. P. 11.  Plaintiff is hereby

4   **ORDERED** to appear at a hearing on **August 13, 2007** at 12:00 noon in Courtroom 9, 940

5   Front Street, San Diego, California, and to show cause why he should not be sanctioned

6   pursuant to Fed. R. Civ. P. 11 for having filed his Second Recusal Motion and Third Recusal

7   Motion in violation of Fed. R. Civ. P. 11(b).  Defendant may, but need not, be present for this

8   hearing.  No briefing is required.

9      Plaintiff's Third Recusal Motion is hereby **REJECTED** for filing. Plaintiff is hereby

10  **ORDERED** to file no further motions, requests, or other documents seeking recusal or

11  disqualification or Judge Burns without prior consent of the Court.

12

13      **IT IS SO ORDERED**.

14  DATED: July 31, 2007

15

16  **HONORABLE LARRY ALAN BURNS**
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -                                                                    07cv0743

# Appendix 1: Second Recusal Motion

1  **LANTZ ARNELL, MD**

2  **P.O. BOX 181583 Coronado, CA 92178**

3  **Tel.  (619) 435-4064**

FILED

2007 JUL 17  AM 11: 56

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LANTZ ARNELL, MD** | Docket # '07 CV 0743 J(RBB)  L A B |
| **Appellant/ Petitioner** | |
| | JUDICIAL REVIEW REQUESTED |
| vs. | **REQUEST that Judge Burns be** |
| | **Disqualified because he is mentally** |
| **Judge W. McAdam** | **Incapacitated.** |
| **Respondent** | Points and Authorities |
| | |
| | Date:        August 13, 2007 |
| | Time:        10:30 AM |
| | Room:        9 |
| | Judge        Burns |

27      WHEREAS the appellant, LANTZ ARNELL, MD, is a business man

28  engaged in interstate commerce defined as purchasing supplies directly from

1

1  manufactures in other states for research performed in the State of California,
2  copyrighted, and made for sale to publishers nationwide.  And the appellant has
3  been paid to do research for other entities in California and other states involving
4  interstate commerce for decades.

5  WHEREAS it has been established in a police report that a man carrying the
6  identification of Randlett T. Lawrence, (herein after Lawrence), drove from his
7  residence in Point Loma, California with premeditation and malice aforethought,
8  picked up an accomplice and drove down Adella Ave. allegedly to check on the
9  grounds at the home next door, instead stopped when they saw the appellant
10  unarmed in his driveway.

11  WHEREAS in deposition Lawrence admits to walking down the appellant's
12  driveway without saying a word,  disrupting his work and arming himself with a
13  deadly weapon.

14  WHEREAS Lawrence admits to assault with a deadly weapon while in
15  criminal trespass in the police report and there is medical evidence that Lawrence
16  stabbed the appellant in the abdomen with that weapon tearing the transverse
17  abdominal muscle at the umbilicus. (The navel stalk was torn from it's base
18  internally.)  The wound was intended to be fatal and would have been were it not
19  for the agility of the appellant (herein after we).

20  WHEREAS The police officer who made the police report in deposition
21  admits that there were important factual errors and his opinion was based on
22  assumptions that he could not substantiate.

23  WHEREAS the D.A.'s office dropped the charges against Lawrence, who
24  was the assailant and pressed charges against the victim.

25  WHEREAS Judge Kerry Wells and Judge O Campo worked in concert to
26  force us into a plea bargain although Judge O Campo had reason to believe that her
27  actions violated federal constitutional laws, and we have reason to believe Judge
28  Wells should have recused herself.

2

1

2    WHEREAS Judge McAdam became aware of these facts and could have
3    dropped the charges against the appellant but did not.

4    We filed a complaint which was 18 pages including the memorandum of
5    points and authorities. And included with that complaint evidence in the form of
6    depositions, police reports and photographs. The complaint, taken by this Federal
7    Court named Judge McAdam as a king pin in organized crime in this state and we
8    have evidence showing that he took orders to refuse a writ of coram nobis.
9    WHEREAS there has been a 2 year intensive investigation into organized crime in
10   the state of California and the complaint documents assassinations over 30 years
11   ago.

12   WHEREAS, Judge Burns read the complaint and issued a statement
13   summarizing the contents of what he read.

14   WHEREAS the second sentence, (line 20, page 1), "According to the
15   complaint, which exceeds 170 pages in length, Plaintiff was involved in an
16   altercation with a neighbor and was tried on criminal charges before Judge
17   McAdam." The statement is false and that false information is not in our complaint
18   nor in Judge McAdam's opposition to our complaint. We are left with proof that
19   Judge Burns is reading without comprehension. There was no trial and Judge
20   McAdam did not find us guilty. Lawrence, according to our complaint and his own
21   statements does not live in Coronado and cannot be considered our neighbor. Loss
22   of the ability to understand the written word is a sign of cerebrovascular disease, (a
23   stroke or a tumor). It is imperative that Judge Burns be examined by a good
24   neurologist and a cardiologist who should use appropriate laboratory studies as soon
25   as possible to rule out other less common but more lethal forms of incapacitating
26   organic brain disease. Untreated, most of these conditions are progressive.

27   The best case scenario is that this is a stroke which could resolve in 6-8
28   months. There is substantial evidence in his four page statement of diminished

3

1   MENTAL INCAPACITY and, legally, if not for his own good he should be
2   disqualified.

3       We hope Judge Burns recovers without residual effects.
4   The foregoing is true to the best of my knowledge.

5

6   DATE: July 14, 2007                Signed _____

7

8               POINTS AND AUTHORITIES

9

10  1. Harrison's Principles of Internal Medicine, 15th Edition p. 131 "Confusion is a
11  mental and behavioral state of reduced comprehension, coherence and capacity to
12  reason." p. 133 "Poor mental performance...is the inability to retain new
13  information...and factual knowledge." "The frontal lobe disinhibition syndrome, p.
14  146, "The impairments may emerge only in real life situations and may not be
15  apparent in the medical office."

16

17  2. C.C.P. § 170.1 "Disqualification of a judge occurs when the facts creating
18  disqualification arise, not when disqualification is established.

19

20  3. CCP § 170.1[c] "A trial judge may be disqualified when a person aware of the
21  facts might reasonably entertain a doubt that the judge would be able to be
22  impartial: it need not be determined whether there is actual bias.—in re Wagner, 25
23  Cal Rptr. 3d 201, 127 (2005).

24

25  4. Christy v. City of El Centro Cal App. 4th 767 (2006) "The standard for
26  disqualification of a judge ...is fundamentally an objective one and not limited to
27  actual bias."

28

4

1   5. CCP § 170.6 Hemingway v. Sup. Ct., 19 Cal Rptr. 3rd 363, 122 Cal App. 4th

2   1148 (2004) "The statutory right to disqualify a judge is automatic in a sense that a

3   good faith belief...is alone sufficient."

4

5   6. CCP § 170.6 "The object of the statutory right to disqualify a judge is to provide

6   a party...with a substitution...to safeguard the right to a fair trial or hearing;"

7

8                                   CONCLUSION

9

10         This case is about long entrenched organized crime in the 9th Circuit. Our

11   investigation goes back 100 years from the inception of organized crime at the turn

12   of the century on the east coast to present day California. The issues require a

13   serious commitment to eliminating racketeering and violence in the 9th circuit.

14   There are well financed people dedicated to blocking this case. In 1993 President

15   Clinton purchased enough vaccine to immunize every child in San Diego County

16   and sent the vaccine to the County Health Dept. An epidemic of measles was

17   killing white children. Organized crime forced through legislation in Sacramento to

18   prevent the distribution of the vaccine. Clinton either underestimated their greed or

19   didn't know they existed. The children kept dying and the vaccines expired on the

20   shelves. One of those children could have been yours. If we don't stop them now,

21   one of those children *will* be yours.

22         Organized crime is based on illusions. The illusion that one lunatic is

23   invincible. The illusion that people of color are not as good as white. If these

24   illusions were real, this complaint by a pro per plaintiff wouldn't terrify them.

25   Organized crime knows that one person with no legal training can take them apart

26   in court. That's how weak they really are. A witness will testify that when Judge

27   McAdam was served, his biographical information was removed from 2 law

28   libraries along with Judge O Campo's. The internet hackers who work for them

                                        5

1   erased them from the internet.  They are afraid of one individual.  We're not trying
2   to tear down their organization.  We just ask for these bogus charges to be dropped.
3   Their fear tells us that organized crime in the 9th Circuit is run by one ruthless
4   paranoid psychopath...(who could be cured with medication.)
5       Respectfully, we have explained and documented Judge Burns' mental
6   incapacity.  We ask that he be disqualified on those grounds but do not retract the
7   allegation that he is biased against the plaintiff and, if he were well, disqualification
8   on those grounds would be reasonable and appropriate.
9
10  Date: July 14, 2007                           Signed_____
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6

# PROOF OF SERVICE—CIVIL

**POS-040**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lantz E. Arnell<br>1516 Glorietta Blvd., Coronado, Ca 92118<br>TELEPHONE NO.: 619 435-4064 FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    San Diego
STREET ADDRESS: Cheryl L. Brieton, Litigation Att.
MAILING ADDRESS: 220 West Broadway
CITY AND ZIP CODE: San Diego, Ca. 92101
BRANCH NAME:

| PETITIONER/PLAINTIFF: | |
|---|---|
| RESPONDENT/DEFENDANT: | CASE NUMBER: |
| **PROOF OF SERVICE—CIVIL** | Docket #07 CV o743 |

**Check method of service *(only one):***

| | | | JUDGE: Burns |
|---|---|---|---|
| ☐ By Personal Service | ☒ By Mail | ☐ By Overnight Delivery | DEPT.: U.S. DIS. CT |
| ☐ By Messenger Service | ☐ By Facsimile | ☐ By E-Mail/Electronic Transmission | |

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. At the time of service I was over 18 years of age and not a party to this action.

2. My address is *(specify one):*

   a. ☒ Business: P.O. BOX 181503       b. ☐ Residence:

   Coronado, CA 92178

3. On *(date):*   7-16-07       I served the following documents *(specify):*

   REQUEST JUDGE BURNS BE DISQUALIFIED

   ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

4. I served the documents on the persons below, as follows:

   a. Name of person served:

   b. Address of person served:

   c. Fax number or e-mail address of person served, if service was by fax or e-mail:

   d. Time of service, if personal service was used:

   ☐ The names, addresses, and other applicable information about the persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

5. The documents were served by the following means *(specify):*

   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-040 [New January 1, 2005] | **PROOF OF SERVICE—CIVIL**<br>(Proof of Service) | Code of Civ. Proc., §§ 1011,<br>1013, 1013a, 2015.5<br>www.courtinfo.ca.gov |
|---|---|---|
| | | American LegalNet, Inc.<br>www.USCourtForms.com |

B. Corriere    7-16-07

B. CORRICCC

B. Corriere

# Appendix 2: Third Recusal Motion

1 | **LANTZ ARNELL, MD**
2 | **P.O. BOX 181583 Coronado, CA 92178**
3 | **Tel. (619) 435-4064**
4
5
6
7
8
9 | # United States District Court
10 | SOUTHERN DISTRICT OF CALIFORNIA
11
12
13 | LAB (RBB)
14 | **LANTZ ARNELL, MD**          Docket # '07 CV 0743 ~~J(LAB)~~
15 | **Appellant/ Petitioner**
16 |                              **COMPLAINT to CHIEF JUSTICE**
17 | **vs.**                      **THAT JUDGE BURNS IS**
18 |                              **MENTALLY INCAPACITATED**
19 | **Judge W. McAdam**          **And request for his disqualification.**
20 | **Respondent**              Points and Authorities
21
22 |                              Date:     August 13, 2007
23 |                              Time:     10:30 AM
24 |                              Room:     9
25 |                              Judge     Burns
26
27 | PURSUANT to U.S.C. 28 § 351(a) "Any person alleging that a judge has
28 | engaged in conduct that is prejudicial to the effective and expeditious

1



1   administration of the courts, OR alleging that such judge is unable to discharge all
2   the duties of office by reason of MENTAL... DISABILITY, MAY file with the
3   clerk of the court of appeals for the circuit a written complaint... "
4     (b) "...the chief judge may, by written order stating reasons therefore, identify a
5   complaint... and thereby dispense with the filing of a written complaint."
6     ( c ) "Upon the receipt of a complaint...the clerk shall promptly transmit the
7   complaint to the chief judge of the circuit..." "The clerk shall simultaneously
8   transmit a copy of the complaint to the judge whose conduct is the subject of the
9   complaint.
10       WHEREAS the appellant, LANTZ ARNELL, MD, is a business man
11   engaged in interstate commerce defined as purchasing supplies directly from
12   manufactures in other states for research performed in the State of California,
13   copyrighted, and made for sale to publishers nationwide.
14       WHEREAS it has been established in a police report that a man carrying the
15   identification of Randlett T. Lawrence, (herein after Lawrence), drove from his
16   residence in Point Loma, California with premeditation and malice aforethought,
17   picked up an accomplice and drove down Adella Ave. allegedly to check on the
18   grounds at the home next door, instead stopped when they saw the appellant
19   unarmed in his driveway.
20       WHEREAS in deposition Lawrence admits to walking down the appellant's
21   driveway without saying a word,  disrupting his work and arming himself with a
22   deadly weapon.
23       WHEREAS Lawrence admits to assault with a deadly weapon while in
24   criminal trespass in the police report and there is medical evidence that Lawrence
25   stabbed the appellant in the abdomen with that weapon tearing the transverse
26   abdominal muscle at the umbilicus. ( navel).  The wound was intended to be fatal
27   and would have been were it not for the agility of the appellant (herein after we).
28       WHEREAS The police officer who made the police report in deposition

2

1  admits that there were important factual errors in the police report and his opinion
2  was based on assumptions that he could not substantiate.

3      WHEREAS the D.A.'s office dropped the charges against Lawrence, who
4  was the assailant and pressed charges against the victim.

5      WHEREAS Judge McAdam became aware of these facts and could have
6  dropped the charges against the appellant but did not.

7      We filed a complaint which was 18 pages in length including the
8  memorandum of points and authorities.  And included with that complaint evidence
9  in the form of depositions, police reports and photographs.  The complaint, taken by
10  this Federal Court named Judge McAdam as a member of organized crime in the
11  9th circuit and we have evidence showing that he took orders to refuse a writ of
12  coram nobis indirectly from an individual who is not a member of the legal
13  community.

14      WHEREAS there has been a 2 year intensive investigation into organized
15  crime in the 9th circuit and the complaint documents assassinations over 30 years
16  ago.

17      WHEREAS, Judge Burns read the complaint and issued a statement
18  summarizing the contents of what he read.

19      WHEREAS the second sentence, (line 20, page 1), "According to the
20  complaint, which exceeds 170 pages in length, Plaintiff was involved in an
21  altercation with a neighbor and was tried on criminal charges before Judge
22  McAdam." The statement is false and that false information is not in our complaint
23  nor in Judge McAdam's opposition to our complaint. We are left with proof that
24  Judge Burns is reading without comprehension. *There was no trial and Judge*
25  *McAdam did not find us guilty.*  Lawrence, according to our complaint and the
26  police report does not live in Coronado and cannot be considered our neighbor.
27  Loss of the ability to understand the written word is a sign of cerebrovascular
28  disease,  brain tumor, or, most commonly, excessive alcohol intake. (See Harrison's

3

1  Principles of Internal Medicine, 15th Edition © 2001, p. 2561-2564.)

2     WHEREAS Judge Burns has refused to recuse himself in this case, where he

3  shows a bias in favor of the respondent, it is unlikely that he will voluntarily recuse

4  himself because we note that he is mentally incapacitated, especially if his mental

5  incapacity is due to alcohol. ( Merck Manual of Diagnosis and Therapy 18th Edition

6  © 2006  p. 1689.) "Confabulation is often a striking early feature."

7     We hope Judge Burns recovers without residual effects.

8                           CONCLUSION

9  Pursuant to U.S.C. 28 § 455(a) "Any judge of the United States shall disqualify

10  himself if his impartiality might reasonably be questioned."  This is a racketeering

11  case.  Judge Burns' diminished mental capacity causes reasonable question of his

12  ability to be impartial.

13     The Chief justice or panel she designates are not physicians and may find

14  that Judge Burns is not impaired.  His written statements and associations with

15  individuals who are the subject of this case establish a personal bias that no

16  reasonable person can ignore.  A reasonable person will recognize that Judge Burns

17  has personal relationships that bring into question his ability to be impartial in this

18  case. [See 28 § 455(b)].  See also Local 338,RWDSU v. Trade fair Supermarkets,

19  EDNY (2006),455 F.Supp.2d 143.

20     Respectfully, Judge Burns does not have the mental capacity nor the

21  prerequisite impartiality to Judge the racketeering-corruption aspects of this case.

22  We ask for his recusal because it is an "expeditious administration" of this

23  complaint.

24

25  The foregoing is true to the best of my knowledge.

26

27  DATE: July 14, 2007                    Signed_____

28

                              4

POINTS AND AUTHORITIES

1. Harrison's Principles of Internal Medicine, 15th Edition p. 131 "Confusion is a mental and behavioral state of reduced comprehension, coherence and capacity to reason."   p. 133 "Poor mental performance...is the inability to retain new information...and factual knowledge."  "The frontal lobe disinhibition syndrome, p. 146, "The impairments may emerge only in real life situations and may not be apparent in the medical office."

2. C.C.P. § 170.1 "Disqualification of a judge occurs when the facts creating disqualification arise, not when disqualification is established.

3. CCP § 170.1[c] "A trial judge may be disqualified when a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial: it need not be determined whether there is actual bias.–in re Wagner, 25 Cal Rptr. 3d 201, 127 (2005).

4. Christy v. City of El Centro  Cal App. 4th 767 (2006) "The standard for disqualification of a judge ...is fundamentally an objective one and not limited to actual bias."

5. CCP § 170.6 Hemingway v. Sup. Ct., 19 Cal Rptr. 3rd 363, 122 Cal App. 4th 1148 (2004)  "The statutory right to disqualify a judge is automatic in a sense that a good faith belief...is alone sufficient."

6. CCP § 170.6 "The object of the statutory right to disqualify a judge is to provide a party...with a substitution...to safeguard the right to a fair trial or hearing;"

7. 28 § 455 A judge may be disqualified where his or her impartiality might reasonably be questioned." Judge Burns' ability to think is impaired. His ability to be impartial requires complete mental capacity. Evidence of an impaired mental capacity creates a situation where every decision made "might reasonably be questioned."

8. U S. v. Burger, CA 10 (Kan) 1992, 964 F.2d 1065 "A recusal ...is committed to the sound discretion of district judge." Judge Burns' ability to think is impaired, therefore sound discretion is not within his intellectual grasp.

9. Nichols v. Alley, C.A. 10 (Okla) 1995, 718 F. 3d 347. "If question of judges' impartiality...is a close one, balance tips in favor of recusal."

10. Local 338 v. Trade Fair Supermarkets (2006) 455 F. Supp. 2d 148 "Recusal of a judge based on an appearance of impropriety is warranted if an objective...observer... would entertain significant doubt that justice would be done absent recusal.

11. Williams v. Anderson  C.A. 6 (Ohio) 480 F.3rd 789 (2006) "Prejudice or bias that may require a judge's recusal under federal statute means...disposition or opinion that is somehow wrongful or inappropriate because it rests upon knowledge that the subject ought not to possess or because it is excessive in degree."

CONCLUSION

This case is about long entrenched organized crime in the 9th Circuit. Our investigation goes back 100 years from the inception of organized crime at the turn of the century on the east coast to present day California. The issues require a

6

1  serious commitment to eliminating racketeering and violence in the 9th circuit.
2  There are well financed people dedicated to blocking this case. In 1993 President
3  Clinton sent enough vaccine to immunize every child in San Diego County to the
4  County Health Dept. An epidemic of measles was killing white children.
5  Organized crime forced through legislation in Sacramento to prevent the
6  distribution of the vaccine. They held our children for ransom until the boss got his
7  "cut" of the distribution money. The children kept dying and the vaccines expired
8  on the shelves. No one in the criminal network was warned. When one of their
9  children got sick, the boss told them it was the drug companies' fault or the doctors'
10  fault. The boss only cares about money. Everyone else is divided and conquered.

11  Organized crime is based on illusions. The illusion that one lunatic is
12  invincible. The illusion that people of color are not as good as white. If these
13  illusions were real, this complaint by a pro per plaintiff wouldn't terrify them.
14  Organized crime knows that one person with no legal training can take them apart
15  in court. That's how weak they are. A witness will testify that when Judge
16  McAdam was served, his biographical information was removed from 2 law
17  libraries along with Judge O Campo's. The internet hackers who work for them
18  erased them from the internet. They are afraid of one individual. We're not trying
19  to tear down their organization. We just ask for these bogus charges to be dropped.
20  Their fear tells us that organized crime in the 9th Circuit is run by one ruthless
21  psychopath...(who could be cured with medication.)

22  Respectfully, we have explained and documented Judge Burns' mental
23  incapacity. We ask that he be disqualified on those grounds but do not retract the
24  allegation that he is biased against the plaintiff and, if he were well, disqualification
25  on those grounds would be reasonable and appropriate.

26
27  Date: July 14, 2007                    Signed _____
28

**PROOF OF SERVICE—CIVIL**

**POS-040**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lantz E. Arnell | |
| 1516 Glorietta Blvd, Coronado, CA 92118 | |
| TELEPHONE NO: 9-435-4064   FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego
STREET ADDRESS:
MAILING ADDRESS:   Cheryl L. Brierton, Litigation Att.
CITY AND ZIP CODE:   220 West Broadway
BRANCH NAME:   San Diego, Ca 92101

PETITIONER/PLAINTIFF:   Lawrence

RESPONDENT/DEFENDANT:   v   Arnell

| PROOF OF SERVICE—CIVIL | CASE NUMBER: |
|---|---|
| | Docket#07 CV 0743 |

Check method of service (only one):

- [ ] By Personal Service  [X] By Mail  [ ] By Overnight Delivery
- [ ] By Messenger Service  [ ] By Facsimile  [ ] By E-Mail/Electronic Transmission

JUDGE:  Burns
DEPT.:  U.S.DIS. CT

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. At the time of service I was over 18 years of age and not a party to this action.

2. My address is *(specify one):*

   a. [x] Business:   b. [ ] Residence:

   P.O. BOX 181503
   Coronado, CA 92178

3. On *(date):*   7-20-07   I served the following documents *(specify):*

   Complaint to Chief Justice that Judge
   Burns is mentally incapacitated and
   request for his disqualification.

   [ ] The documents are listed in the *Attachment to Proof of Service—Civil (Documents Served)* (form POS-040(D)).

4. I served the documents on the persons below, as follows:

   a. Name of person served:

   b. Address of person served:

   c. Fax number or e-mail address of person served, if service was by fax or e-mail:

   d. Time of service, if personal service was used:

   [ ] The names, addresses, and other applicable information about the persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

5. The documents were served by the following means *(specify):*

   a. [ ] **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 4.
   (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-040 [New January 1, 2005] | **PROOF OF SERVICE—CIVIL**<br>(Proof of Service) | Code of Civ. Proc., §§ 1011,<br>1013, 1013a, 2015.5<br>www.courtinfo.ca.gov |
|---|---|---|
| | | American LegalNet, Inc.<br>www.USCourtForms.com |

B. CORRIERe

B. Corriere

7-20-07